By the Court

Lyon, J.,
delivering the opinion.
1. "We do not think that the complainant was entitled to a continuance of his injunction, by reason that the projected canal and levee of defendant interfered with or defeated any of the advantages or benefits acquired by complainant from the canal and levee which he had previously constructed under an agreement between himself, Hargrove and Howard, because the answer of the defendants and accompanying affidavits show that the levee constructed by complainant under that agreement, either was not made in accordance with that agreement, or from want of necessary repairs they utterly failed to protect either his own or the lauds of complainant and Howard, as they would have done if *146 built in accordance with the agreement. Let us then look at the case as it was made and now stands by the bill and answer, independently of that agreement and the work done under it. The bill alleges that the defendant proposes to erect a canal with a levee on its south side its entire length, from the northeastern corner of his lands, along the north line thex’eof, parallel with and contiguous to the south side of complainant’s land, across Beaver creek to the river; that the banks of the lands on the river are some three or four feet higher than the lands on the margin of the creek, and that the canal will have to be cut that much deeper through these lands at the point where it enters the river, so as to run the water out of the creek into the river, so that on a rising the river would cause the waters to flow back up the canal and inundate from one to three and four feet some four or five hundred acres of complainant’s lands, a large portion of which, if not quite all of the same, is in cultivation and of great value; that the injury thus done cannot be arrived at. That it would injure the saleable value of the lands $30,000 00, and is irreparable; that the waters are let in upon the land through the opening to be made in the banks of the river by the canal and forced back by the levee on its south side, and that such canal and levee is now in process of erection.
The defendant admits in his answer that he is constructing a canal and levee, and that he is doing so to protect his land, fi’onx the overflows of the river, which break through the levee on the north line of complainant’s land and come down through complainant’s plantation on the north, and flood the plantation of defendant, doing him incalculable damage by destroying his crop, delaying his cultivation and washing away the soil; that it is possible for the waters fx’om the river to back up through his canal when completed, and so overflow a portion of complainant’s land, how much he does not know, but to do this will require a rise from twelve to fifteen feet, and he believes that such a rise would break the north levee of complainant and thus overflow not only the same land, but much more besides.
Here is a plain admission of the wrong complained of, and its injury to the complainant — not a probable or contingent injui’y — but one that is certain to occur whenever the river rises to *147 a height of from twelve to fifteen feet, which is not uncommon or improbable. The excuse offered by the defendant for this invasion of the complainant’s rights, is not a good or sufficient one. It is to protect himself from overflows that break through the levee on the north side of complainant’s land, etc. It is not pretended that it was a part of the agreement between complainant, Hargrove, (from whom defendant purchased) and Howard, that if the complainant did not build a levee that would protect the plantation of these persons from overflows, that then either of the parties might protect themselves by similar levees, that would back the waters on the complainant’s lands, nor can such a right be implied from such agreement. The complainant, by failing to perform his part of that agreement, might subject himself to an action for the damages he thereby occasioned, but his breach of his part of the agreement will not license the other parties to divert the waters of the creek or river from their natural direction, for their protection and to the injury of complainant. Neither is the supposition that the same rise in the river that would cause an overflow of the land of complainant from the canal and levee of defendant, might break the levee on the north line of complainant’s land and produce the same or worse injuries to complainant’s land, a justification to the defendant for his projected wrong, for against the breakage of the levee the complainant may provide] if he does not, the consequences are with him, but against the injuries that may result from the proposed canal and levee of the defendant, he cannot protect himself. The act and injuries complained of being admitted, what is the remedy? “To divert or obstruct a water course is a private nuisance, and the books are full of cases and decisions asserting the right, and affording the remedy : ” Chancellor Kent, in Gardiner vs. Newburgh, 2 John. Ch. R., 164.
2. Cases of a nature calling for the like remedial interpositions of Courts of equity, are the obstruction of water courses, the diversion of streams from mills, the back flowage on mills, and the pulling down of the banks of rivers and thereby exposing adjacent lands to inundation, or adjacent mills to destruction : Story’s Eq. Jur., 927, and cases there cited. “It is well established that a Court of equity has concurrent jurisdic *148 tion with the Courts of law in cases of private nuisance Waterman’s Ed. on Injunctions, 268, 271, and notes; Gardiner vs. Newburgh, cited above.
3. This being a private nuisance, clearly admitted, as we think, the party complainant was entitled to an injunction, so far as the opening of the canal was concerned, and the judgment of the Court below dissolving the one already granted, was erroneous.
4. It is true that the granting or dissolving an injunction is ordinarily within the discretion of the Court below; yet, where that discretion has been abused to the manifest injury of a party, it is the duty of this Court to correct it, and such has been its practice. The defendant in the argument relied upon a statute of the State, which I have not before me, but passed, I think, in 1855 and 1856, authorizing persons to divert unnavigable streams.through their own lands.
5. Although the statute gives such right, it did not intend that such thing should be so done as to affect the rights of a third person. If it did, the Act for that purpose would be void, because the right of persons to have waters in which they have an interest, to flow as they have been accustomed; is an incident of property of which they cannot be deprived, even for the use of the public, without compensation. That is one of the principal questions settled in Gardiner vs. The Village of Newburgh, 2 Johnson’s Chancery Reports, 164.
Let the judgment be reversed on the ground that the Court below erred in dissolving the injunction. And we direct that the injunction be so modified as to permit the defendant, Hill, to continue his embankment or levee along the line of his projected canal, so as to protect his land from inundation, if he chooses to do so.