ISABEL GATES, Administratrix, *vs.* SOUTHERN MINNESOTA RAILWAY
COMPANY.

July 7, 1881.

**Master and Servant—Care in furnishing Safe Machinery, etc.**—The
degree of care and prudence which a master is bound, as between himself
and his employe, to exercise in providing the tools, machinery and appli-
ances for transacting the business of the employment, is that reasonable
care and prudence, in selecting or ordering what he requires in his busi-
ness, which every prudent man is expected to employ, in providing himself
with the conveniences of his occupation.

**Same—Duty of Railway Company to its Employes, in guarding
against Washouts, Land-slides, etc.**—On the trial of an action against
a railroad company to recover for an injury resulting in the death of one
of its employes, caused by the track being in an unsafe condition from
sand having washed upon it in a storm, the court charged the jury, that
it is the duty of those who use hazardous agencies to control them care-
fully, and to adopt every ordinary known and usually approved inven-
tion to lessen the danger and guard against every ordinary probable dan-
ger by such means as ordinary prudence would suggest or dictate; and
railroad companies are bound to take notice of the topography of the
country along their lines of road, and to take notice of the climate of
the country in which their roads are, and about the storms and floods
that annually occur in those localities, and make all necessary guards
against danger caused by ordinary and usually severe storms of the
locality where the road is located. It was the duty of the defendant to
so construct its road as to make it reasonably safe, and to guard against
washouts, land-slides, and obstructions which might endanger the lives
of the passengers and employes passing over the same; and any neg-
lect of the defendant in that behalf would make it liable to the plain-
tiff if such neglect caused the injury. It was also the duty of the
defendant to keep its road in suitable and safe repair, and keep and main-
tain suitable ditches and culverts, at suitable and proper places, to carry
off the surplus water naturally running down upon the track or road of
the defendant company; and the neglect of the defendant to perform that
duty, if such neglect was the cause of the accident, will make the defend-
ant liable. *Held*, notwithstanding the court also in general terms charged
the jury that the degree of care and prudence required of the defendant in
the case was "due and ordinary care," "reasonable care," and "ordinary

prudence," that the charge, as a whole, was erroneous, for the jury may have understood from it that it was the absolute duty of the defendant, without regard to the degree of care used by it to effect the purpose, to make all necessary guards against danger caused by ordinary storms, and to guard against land-slides, washouts, and obstructions which might endanger the lives of passengers and employes, and to keep its road in suitable and safe repair.

Plaintiff's intestate was employed by defendant as fireman on a locomotive, and was, on August 27, 1877, while in defendant's employ, killed by an accident on defendant's road. It appeared from the evidence that, at the place where the accident occurred, there had been a washout the day before, and sand had been washed upon the track. The locomotive, to which were attached flat cars loaded with piles, was thrown from the track, and the piles were thrown upon deceased, crushing him to death.

This action was commenced in the district court for Houston county, to recover damages for causing such death. Upon a trial by a jury, before *Farmer*, J., plaintiff had a verdict, and defendent appeals from an order refusing a new trial.

*J. W. Losey* and *C. W. Bunn*, for appellant.

*M. P. Wing* and *W. H. Harries*, for respondent.

GILFILLAN, C. J. The evidence in this case was such that the question of defendant's negligence, and of contributory negligence on the part of plaintiff's intestate, was for the jury to determine; and it was not such that we can say the danger which caused his death was one of those which intestate knew, or which, in the exercise of proper care, he might have known, to be one of those incident to the employment that he was engaged in, and the risks of which he had assumed. In all respects the case was a proper one for a jury. But the charge of the court was likely to mislead the jury into applying a more severe rule as to the care and prudence required of defendant than is applicable as between master and servant. The failure alleged against defendant was to provide a suitable—that is, a safe—track for the running of a train on which the intestate was employed at the time he was killed. Its unsafe condition was caused by sand, which had been washed on it from a hill by the side of the track in a storm.

Cooley on Torts, 557, states what is the duty of a master to his servant in such case, thus: "The law does not require him to guaranty the prudence, skill or fidelity of those from whom he obtains his tools, or machinery, or the strength or fitness of the materials they make use of. If he employs such reasonable care and prudence, in selecting or ordering what he requires in his business, as every prudent man is expected to employ in providing himself with the conveniences of his occupation, that is all that can be required of him."

The same degree of care is required of the master, in keeping what is required in the business in good condition, as in originally selecting it. Where the master entrusts the duty of providing the tools, machinery and appliances necessary for performing his business and keeping them in safe condition to others, he is responsible for their neglect to employ that degree of care and prudence. As held by this court in *Drymala* v. *Thompson*, 26 Minn. 40, those to whom a railroad company entrusts the duty of placing or keeping its track in safe condition for the running of cars, must, in respect to its other servants employed in running the cars, exercise that degree of care and prudence, and the company is liable to such other servants for injuries caused by their neglect to do so. That is the degree of care and prudence which determines the defendant's liability in this case. The liability is subject to be affected by another rule, to wit: that when a servant accepts or continues in an employment which is unsafe by reason of this unsuitableness or inadequacy of the instrumentalities provided for it by the master, and such unsuitableness or inadequacy is known to the servant, or is so apparent and open to observation that he is chargeable with negligence if he do not know it, then he must be assumed to have taken on himself the risk incident to such unsafe condition. *Fleming* v. *St. Paul & Duluth R. Co.*, 27 Minn. 111; *Hughes* v. *Winona & St. Peter R. Co.*, Id. 132; *Walsh* v. *St. Paul & Duluth R. Co.*, Id. 367.

The court below charged the jury, among other things, that "it is the duty of those who use hazardous agencies and instrumentalities to control them carefully, and to adopt every ordinary known and usually approved invention to lessen the danger, and to guard against every ordinary probable danger by such means as ordinary prudence

would suggest or dictate. Railroad companies are bound to take notice of the topography of the country along their lines of road, and to take notice of the climate in which their roads are, and about the storms and floods that annually occur in those localities, and make all necessary guards against danger caused by ordinary and usually severe storms of the locality where the road is located. It was the duty of the defendant to so construct its road as to make it reasonably safe, and to guard against washouts, land-slides, and obstructions which endanger the lives of the passengers and employes passing over the same; and any neglect of the defendant in that behalf would make it liable to the plaintiff, if such neglect caused the injury. It was also the duty of the defendant to keep its road in suitable and safe repair, and keep and maintain suitable ditches and culverts, at suitable and proper places, to carry off the surplus water running down upon the track or road of the defendant company; and the neglect of the defendant to perform that duty, if such neglect was the cause of the accident, will make the defendant liable."

The court did, indeed, charge, in general terms, that the degree of care and prudence required of the defendant in the case was "due and ordinary care," "reasonable care," and "ordinary prudence." But this was not sufficient to cure the errors occurring in the portions of the charge we have quoted; for the prevailing tone of the entire charge was on the plane of those portions. So far as the charge, taken as a whole, lays down a rule as to the degree of care and prudence required in the case, it was, at least, as high a degree of care and prudence as is required between a common carrier of passengers and a passenger, and portions of the charge even go beyond that. Notwithstanding what was said as to "due and ordinary care," "reasonable care," and "ordinary prudence," the jury may have understood, and probably did understand, that it was the absolute duty of the defendant to make all necessary guards against danger caused by ordinary and usually severe storms, and to guard against washouts, land-slides, and obstructions which might endanger the lives of passengers and employes, and to keep its road in suitable and safe repair; and that no amount of care and prudence to effect these ends would

v.28—8

relieve the defendant from liability, if the ends aimed at were not accomplished. This would make the defendant guaranty the safety of its track, in the respects indicated by the portions of the charge quoted.

Other errors in the trial are alleged; but, as there must be a new trial, on which they may not occur again, we do not think it necessary to specify them.

Order reversed, and a new trial ordered.