## KAVANAGH vs. THE MOBILE AND GIRARD RAILROAD COMPANY.

1. If a street in a city be occupied by the side-tracks of a railroad company and its cars and engines, without authority of law, it is a public nuisance. If the owner of adjoining property suffer special damage therefrom, in which the public do not participate, this entitles her to maintain an action. And if the injury, from its nature, is not susceptible of being adequately compensated by damages at law, or is such that, from its continuance, a permanent mischief must occasion a constantly recurring grievance, which cannot be otherwise prevented, equity will enjoin it.

2. Under the act incorporating the city of Columbus, as construed by this court, the fee in the streets is in the State and the use in the public; and the municipal authorities have no power to authorize any obstructions to be placed in the streets, legislative action being necessary for that purpose. The act of 1857 authorized the connection of the Muscogee Railroad with the Opelika Branch Railroad and the Mobile and Girard Railroad at Columbus, by extending their roads through the city commons and streets, with such side-tracks, turn-outs and sheds as might be necessary for the convenience of freights and passengers, provided they first obtained the consent of the people of the city, upon such terms as might be agreed on and should be satis-

factory to them.   But where the municipal authorities, by resolution, proposed to the people to vote "connection" or "no connection," only submitting the question of allowing a connection by a single track, and the vote was in favor of "connection," this action, without more, did not authorize the laying of side-tracks in the street.   Nor could the mayor and council, without further authority, grant such power.

February 26, 1887.

Damages.   Nuisance.   Municipal Corporations.   Injunction.   Columbus.   Before Judge WILLIS.   Muscogee County.   At Chambers, July 24, 1886.

Reported in the decision.

W. A. LITTLE; W. A. CARTER, for plaintiff in error.

PEABODY, BRANNON & BATTLE, for defendant.

BLANDFORD, Justice.

The plaintiff exhibited her bill in equity against the defendant, in which she alleged that the defendant, without authority of law, had laid down certain side-tracks on and along Thomas street, now called Ninth street, from Broad, crossing over Front street, and used and occupied the same for their engines and cars; that she was the owner of a certain house and lot that she used as her residence, on the corner of Front and Thomas streets, and that by the noises and smoke of the engines of the defendant standing on the side-track, her property was damaged, in that she was prevented from the free use of the same by the noises and smoke aforesaid; and she prayed that said defendant be enjoined from using said side-tracks in the manner complained of.

1.   The first question is, will a court of equity entertain jurisdiction, under the facts alleged in the bill, to enjoin this nuisance?   If this street is occupied by the side-tracks of the defendant and its cars and engines, without

authority of law, it is a public nuisance. See code, §2997; 6 East, 427; 3 Campbell, 224. And if the complainant suffered special damage, as she complains, in which the public does not participate, this damage entitles her to maintain an action. See code, §2999. As to her, it becomes a private nuisance, "if it worketh hurt and annoyance to the land of another." 3 Blackstone's Commentaries, 215; 9 Paige, 576. If the injury, from its nature, is not susceptible of being adequately compensated by damages at law, or is such as that, from its continuance, a permanent mischief must occasion a constantly recurring grievance, which cannot be otherwise prevented, equity will enjoin. See 2 Story Eq. Jurisp. 925; 9 *Ga.* 425; 33 *Ga.* Supplement, 141; 30 *Ga.* 507; 64 *Ga.* 423; 6 Johnson's Chan. Rep. 439; 2 Dillon Municip. Corp. 661–669. And it appears to us, from the allegations in this bill and the proof submitted, that the grievance is constant and continuous. The plaintiff in error would have a suit continuously at stated times for her continuing damage, and thus a multiplicity of suits would arise; and this, if nothelse, would call for the interference of a court of equity. In the case of the *Georgia Chemical, etc. Company vs. Colquitt et al.* 72 *Ga.* 172, this court held: "If a public nuisance causes special damage to an individual, in which the public do not participate, such special damage gives a right of action; and as an action may be brought every day the nuisance continues, equity, which abhors a multiplicity of suits, will entertain jurisdiction, so as to do full and complete justice between the parties and terminate the litigation." We think, then, it is very clear, from the authorities, that the complainant has a right in equity to enjoin this nuisance.

2. Did the defendant have a right, under the law, to lay down these side-tracks and use the same as complained of? That will depend upon whether the city had authority to allow the use of this street in such manner. Under the act of December 24th, 1827, certain lands were reserved

v 78-18

for the use of the State, near the Coweta Falls, on the Chattahoochee river; certain persons were designated as commissioners to lay out a trading town and to dispose of said lands, and said commissioners were required by the act to lay out a square, or an oblong square, fronting the Chattahoochee river, of twelve hundred acres, as a reservation for the common and town of Columbus, within which square they are required to lay out not less than five hundred oblong lots of half an acre each, with an appropriate number of streets and alleys, and a certain number of reserved squares for public buildings; and the town was named Columbus. Dawson's Compilation, 470. On the 19th of December, 1828, the legislature passed another act to incorporate the town of Columbus, in the county of Muscogee, etc. Dawson's Comp. 474. And in that act it was provided that the intendant and commissioners shall in no case have power to alter the plan of said town by shutting up streets or otherwise, nor to permit any dwelling-houses or other buildings to be put on any of the streets or common of said town, on any lease or leases, or in any other way, etc.

This court held, in the case of the *Mayor and Council of Columbus vs. Jaques, and the same vs. Oliver, solicitor-general,* that an obstruction to a public street in the city is a public nuisance, and that a court of equity has jurisdiction, and will, on a proper case made for injunction, restrain a public nuisance, and that under these several acts of the legislature which have been alluded to, the Mayor and Council of the city of Columbus had no power to erect, or cause to be erected, a market-house in the streets of the city. The fee to the streets is in the State, and the use in the public, and the city authorities, under the several acts of the legislature, have no power to authorize any obstruction to be placed in said streets. To authorize the act complained of would require legislative interference.

But the defendant in error contends that, under the act

of December 21st, 1857, the city authorities had the power to authorize these side-tracks to be laid down on this street. That act authorizes the connection of the Muscogee Railroad with the Opelika Branch Railroad and the Mobile and Girard Railroad, at Columbus; and it provides that the president and directors of said roads shall have the power of connecting their roads by extending them through the city commons and streets of Columbus, with such side-tracks, turnouts and sheds as may be necessary for the convenience of freights and passengers; provided they first obtain the consent of the people of the city of Columbus, upon such terms as may be agreed on, and shall be satisfactory to them.  Under this act, the Mayor and Council of the city of Columbus, by resolution, proposed to the people of the city of Columbus, in 1858, to vote " connection" or " no connection; " and the resolution which submitted this to the people of Columbus merely authorized these railroads to connect by a single track along Thomas street; and upon this resolution, the people of Columbus voted, and voted " connection." It would seem that the only consent which the people of Columbus gave, and the only terms which they agreed upon by this vote of theirs, were that these roads might connect in a single line along Thomas street.  They never consented that any side-tracks, for the delivery of freight to the citizens or persons doing business on said street, might be laid down by said roads; and it will be noted that the Mayor and Council of the city of Columbus· are not noticed by this act.  No consent of the city authorities would authorize the connection of these roads, or for them to lay down any side-track upon this street; but the consent mentioned in the act is that of " the people of the city of Columbus." There is no other act of the legislature, to which our attention has been called, which would authorize the Mayor and Council of the city of Columbus to permit these side-tracks to be laid. It may be that, under this act of the legislature, a further consent of the people of Columbus might be given by them

in a further vote to be taken, that such side-tracks might be laid down along said street; but without this, or some further legislation, the authority given by the Mayor and Council of the city of Columbus to this railroad company was of no effect, and did not authorize said company to lay down said side-tracks and to use the same as complained of.

So we think that the court was wrong in refusing this injunction, and the judgment is reversed.