## ROBERTSON *v.* ARNOLD.

No. 11242.   JULY 2, 1936.

*T. G. Head* and *Baker & Townsend,* for plaintiff.

*F. M. Gleason,* for defendant.

RUSSELL, Chief Justice.   Robertson brought a petition praying that Arnold be enjoined from diverting water from a non-naviga-ble stream flowing on the land of the plaintiff.   The court sus-tained a general demurrer and dismissed the action, and the plain-tiff excepted.

It is stated in the brief of counsel for the defendant that the only question in this case is whether or not the petition sets forth a cause of action; and that in order to apply the law applicable in cases of this kind, the plaintiff must set forth in his petition suf-ficient facts to justify the relief which he asks the court to grant. The statement of the law by counsel is true in a general way; but several questions are raised in this case to which the state-ment of the law by counsel does not give consideration.   The plaintiff sued to enjoin the diversion of a non-navigable stream from his premises, which would or might be to his injury and damage.   It is true that the plaintiff alleges that it is only a tributary of Ellis Springs branch, but it is also alleged that it has been diverted in such a way that it flows into the branch so much further down the flow of the stream that the diversion will impair the value of the stream to him for the purpose of furnish-ing water-power.   But under previous decisions of this court, the plaintiff's action is based on the old maxim, *aqua curret et debet currere in modo quo currere solebat,* which translated into English is, water runs and it ought to run in the same way in which it was accustomed to run.   It matters not whether the use to which the running water can be applied is present or prospec-tive; a riparian owner has a right to which he would by law be entitled.   Great stress is laid by counsel for the defendant on the fact that there has not been a mill upon this stream for more than ten years, and that there may never be any use for it for this purpose in future.   Counsel suggests "that plaintiff in error take the advice of the court, and follow the suggestion of the trial

court and 'wait until he has some occasion to use the water in the mill-race or stream for mill purposes, and then complain of the unlawful interference on the part of the defendant, if any such unlawful interference with plaintiff in error's rights have been committed.'" We can not agree to the suggestion, for the reason that under the decisions of this court the plaintiff was not required to wait, and perhaps in future have to meet a claim of right adverse to his title; for this court has held that riparian rights of the riparian owner are a part of and go with the soil.

Counsel for the defendant relies on *Pittard* v. *Summerour,* 181 *Ga.* 349 (supra), in support of his contentions. In that case injunction was prayed against a continuing nuisance alleged to be due to the prospective building of a tannery on the stream in question, while in the case at bar injunction is sought to prevent the diversion of a running stream. It is thus quite evident that the principle dealt with there has no application to the case at bar. As to the diversion of a non-navigable stream in Georgia, the rule is inflexible that a riparian owner has a right equal to his right to the soil which underlies the stream, to have the water run where it had been running before the diversion was contemplated. In the *Pittard* case, in which there was an application to enjoin a nuisance, the court held that "A court of equity will only exercise the power to restrain nuisances in the course of construction in cases of necessity, where the evil sought to be remedied is not merely probable, but certain." So the statement that "mere allegations of speculative or contingent injuries, with nothing to show that they will in fact happen, do not require an injunction," has no bearing in a case in which the point raised by the petition and the demurrer is whether as a matter of law the allegations state a case which should prevent the diversion of a running stream. Robertson alleges that he is the owner in fee simple of 88 acres of land (copy of his deed being attached to the petition), and that over and upon said property flows a stream of water which is very valuable to the owner by reason of the fact that a certain water-race was supplied by this stream, known as Ellis Springs branch; that numerous tributaries of said branch rise from springs above the land of petitioner and empty into said branch above his land; that while he has not operated a mill in connection with said water-race during the past ten years, his

property is rendered more valuable by reason of the fact that said stream flowed with full force down said water-race, making said property adaptable for construction of mill or power plant; that it is his intention to repair said race and construct a power plant on said property; that the defendant has dug a ditch preparatory to diverting a substantial tributary to the Ellis Springs branch from said branch, so as to cause the same to flow over his own property to a pond which defendant has constructed; that water thus diverted will flow into said pond where the same would be unreasonably delayed, would evaporate, and the remainder would flow back onto the property of petitioner below where the same could ever be run into his water-race; that defendant has already diverted water from one spring, and is threatening to divert the water of another spring in its entirety; that he has threatened to enter and divert all water from said water-race, which water so diverted would not be replaced in petitioner's water-race; that such acts and threatened acts of the defendant would completely deprive petitioner of his water-race and destroy in its entirety the value of the same; that when said Ellis Springs branch flows into the water-race the change is upon the property of petitioner, and said water empties into Peavine Creek at the approximate point the same would empty had it not been changed from the branch to the water-race; that said water-race was constructed before 1894, and was in constant use until ten years ago; that the reasonable value is $2000; that if defendant be permitted to divert said stream, it would diminish the water-supply for the water-race, and the same would be useless for power purposes.

Before the ruling on demurrer, the petition was so amended as to set out that Mrs. Jack Jones had purportedly granted to the defendant the right to divert the said stream, but that if defendant were permitted to divert said stream the plaintiff would suffer irreparable injury; that the defendant was insolvent and unable to respond in damages; and that the defendant had so dug his ditch and threatened to divert the tributaries to Ellis Springs branch as to cause the same to flow along and through and upon non-riparian lands physically separated from the lands bordering on the stream. The demurrer which was sustained is as follows: "I. That said petition as a whole or none of its parts set out or set forth a cause of action against this defendant. II. That the

plaintiff does not allege any fact or facts which would entitle him to an injunction. III. That it conclusively appears from plaintiff's petition that he has no interest in the subject-matter, and therefore can not maintain this suit. IV. It appears from the allegations of plaintiff's petition that the alleged change in the course of the water was not made on his land, and that plaintiff always can get the same amount of water that he formerly had. V. It appears from the allegations of plaintiff's petition that he only anticipates an injury, and that none has been committed." The order of the court was as follows: "Upon consideration of the within demurrer the court is of the opinion that the petition of plff. as amended is too speculative and does not set forth a cause of action. The plff. complains that deft. is appropriating a part his water power, and yet pleads that he has not used such power for more than 10 years, and has no present needs of using it now. Therefore the petition is dismissed," etc.

We are of the opinion that the judge erred in sustaining this demurrer. It is declared in the Code of 1933, § 105-1407: "The owner of land through which non-navigable watercourses may flow is entitled to have the water in such streams come to his land in its natural and usual flow, subject only to such detention or diminution as may be caused by a reasonable use of it by other riparian proprietors; and the diverting of the stream, wholly or in part from the same, . . or any right appurtenant thereto . . shall be a trespass upon his property." In *McNabb* v. *Houser,* 171 *Ga.* 744 (156 S. E. 595, 74 A. L. R. 1122), this court held: "Where a lower riparian proprietor files a petition praying for injunction against an upper proprietor, who is threatening to interfere with his rights in a non-navigable stream flowing through his land, by diverting a part of the water above the land of the complainant and turning it into another stream, the defendant admitting that it is his purpose so to divert the water, it will be error to refuse an injunction upon the ground that the threatened injury is such as to result in no material damage to the complainant. *Chestatee Pyrites Co.* v. *Cavenders Creek &c. Co.,* 118 *Ga.* 255 (45 S. E. 267)." In that decision Judge Hines went very fully into a discussion of the principles which we deem to be involved in the case at bar. The judge seems to have based his order largely on the ground that the plaintiff's damage, if any, is

speculative. In the view which we entertain of this case, damage to which the proprietor of riparian rights may under any probability be subjected, which impair benefits which may accrue to him in any possible use of his property in future, are not in any sense speculative, as shown by the ruling in *City of Elberton* v. *Hobbs,* 121 *Ga.* 749 (49 S. E. 779), where this court held: "The right of the owner of land through which a non-navigable stream flows to have its waters come to his land in the natural and usual flow is inseparably annexed to the soil and is parcel of the land itself, and comes within the protection of the constitutional provision which forbids the taking of private property for public purposes, without just and adequate compensation being first paid. *Persons* v. *Hill,* 33 *Ga. Supp.* 141; Hough v. Doylestown, 4 Brewst. 333. . . Equity will enjoin a municipal corporation from taking a water supply from a stream in violation of the rights of a riparian owner, though he may not at once be seriously injured thereby. *Persons* v. *Hill,* supra; *Chestatee Pyrites Co.* v. *Cavenders Creek Gold Mining Co.,* 118 *Ga.* 255 [45 S. E. 267]; Burden *v.* Stein, 27 Ala. 104 [62 Am. D. 758]; Higgins *v.* Flemington Water Co., 36 N. J. Eq. 538; Pine *v.* New York, 103 Fed. 337; 1 Farnham on Waters, 616." The facts of the present case are much stronger; for, according to the allegations of the petition, the water was so diverted that it could never be placed back in petitioner's water-race, because it was returned at a different point and at a lower level, while in the *Hobbs* case it was shown that three fourths of the water went back in the same channel of the stream. It is undoubtedly the law that the rights of riparian owners in non-navigable streams are not to be restricted within the scope allowed by law to riparian proprietors. This court would not hold that Brown being the owner of a field, but having no present use for the same, Smith could enter upon Brown's land and cultivate and gather the crops thereon. Nor would this court hold that Smith could enter the residence property of Jones, and, because Jones was confined to his bed and unable to use his automobile, for Smith to drive this property of Jones and appropriate it to his own use, because Jones had no present ability to either operate or enjoy the same himself. Nor would this court hold that in such a case Jones must wait until he was able to drive his car before seeking to recover the same from Smith. In *Chestatee Py-*

*rites Co.* v. *Cavenders Creek &c. Co.*, supra, cited by counsel for both sides in this case, it was said: "Where, therefore, a lower riparian proprietor files an equitable petition praying an interlocutory injunction against an upper proprietor who is threatening to interfere with petitioner's rights in a non-navigable stream flowing through his land, by diverting part of the water above the lands of the petitioner and returning it to the stream below such lands, and where it appears from the record that the defendant, a non-resident of the State, admits the contemplated trespass and defends solely upon the ground that the diversion of the water will not damage the petitioner to any material extent, it is error to refuse the injunction prayed: (1) because the diversion of the water would be an injury to the petitioner's property and property rights; (2) because the injunction would prevent a multiplicity of suits; and (3) because the injunction would restrain acts of the defendants which might with the lapse of time become the foundation of adverse right. Civil Code, § 3057 [1933, § 85-1301]; *Hendrick* v. *Cook,* 4 *Ga.* 262; *Pool* v. *Lewis,* 41 *Ga.* 162 [5 Am. R. 526]; Webb *v.* Mfg. Co., 3 Sumner, 189; Angell, Watercourses, § 440; Gould, Waters, 513; 1 Addison, Torts (Wood's ed.), § 100, note 1; 3 Pom. Eq. Jur. § 1357." The essential principles controlling the case at bar were stated in *Hendrix* v. *Roberts Marble Co.,* 175 *Ga.* 389 (165 S. E. 223), supported by the decisions which we have cited; and there is the extreme case of *Goodrich* v. *Georgia Railroad & Banking Co.,* 115 *Ga.* 340 (41 S. E. 659). In the *Roberts* case this court held that running water belongs to the owner of the land while it is on the land, "'but he has no power to divert it from the usual channel, nor can he so use or adulterate it as to interfere with the enjoyment of it by the next owner.' Civil Code (1910), § 3629 [1933, § 85-1301]. Where, therefore, a lower riparian proprietor (the defendant in a petition in which the plaintiff prays for an injunction restraining the defendant from interfering with plaintiff's diversion of water) by way of cross-action seeks an interlocutory injunction to prevent the plaintiff from diverting part of the water from the lands of the defendant, and the plaintiff admits the diversion of the water and justifies his action upon the ground that he himself is a grantee from a riparian owner above the defendant, an interlocutory injunction to restrain the plaintiff from the proposed diversion is properly

granted. *Aqua curret et debet currere in modo quo currere solebat.* No riparian proprietor has the right to use the water to the prejudice of other proprietors above or below him. He has no property in the water itself, but a simple usufruct while it passes along. 3 Kent's Com. 439." See also *Spencer* v. *Tumlin,* 155 *Ga.* 341 (116 S. E. 600), in which the unanimous opinion of the court was delivered by Mr. Justice Hines, where the propriety of an injunction against a nuisance was considered, and not the propriety of an injunction against a trespass, as is the case sub judice. This court held: "Where the threatened or existing tort constitutes a continuing nuisance, a proper case for equitable action is made. *Russell* v. *Napier,* 80 *Ga.* 77 (4 S. E. 857); *Simmons* v. *Lindsay,* 144 *Ga.* 845 (88 S. E. 199); *Spires* v. *Wright,* 147 *Ga.* 633 (95 S. E. 232); *Dodson* v. *Evans,* 151 *Ga.* 435 (107 S. E. 59). The thing complained of by the plaintiffs is a continuing nuisance. Furthermore, they seek to recover damages from the defendants for the creation of this nuisance. Plaintiffs can certainly recover any damages which had accrued up to the time the injunction was granted. *Swanson* v. *Kirby,* 98 *Ga.* 586 (26 S. E. 71)."

The court is constrained to hold that the judge erred in sustaining the demurrer and in dismissing the action.

*Judgment reversed. All the Justices concur.*