GOBLE *v.* LOUISVILLE & NASHVILLE RAILROAD CO.

No. 12570.   December 2, 1938.

*Roscoe Pickett* and *Henderson· & Spence,* for plaintiff in error.

*Morris & Welsch, Tye, Thomson & Tye, A. H. Burtz,* and *Watkins Edwards,* contra.

Grice, Justice.   Suit for damages and injunction was brought by J. R. Goble against Louisville & Nashville Railroad Company. The defendant demurred to the petition and to the petition as amended; and the plaintiff demurred to portions of the answer. The court dismissed the action on demurrer, and the plaintiff excepted.

 The plaintiff's right to recover damages, if he proves his case as laid (a brief recital of most of his material allegations is contained in the first headnote) is recognized by an unbroken line of authority from foreign jurisdictions (see 27 R. C. L. 1101, § 37; 67 C. J. 698, § 2), and is supported by a number of rulings from this court which are hereinafter cited on other features of the case, and also by the principle found in the Code, § 105-1407, that the owner of land through which a non-navigable watercourse flows is entitled to have the water come to his land in its natural and usual flow, and the obstructing thereof so as to cause it to overflow or injure his land is a trespass.   As 'pointed out by Mr. Chief Justice Russell in *Robertson* v. *Arnold,* 182 *Ga.* 664, 672

(186 S. E. 806, 106 A. L. R. 681), all of our law with regard to the respective rights of the owners of land on non-navigable streams comes from or is based upon the old maxim of Justinian, "Aqua curret et debet currere in modo quo currere solebat," which translated is, "Water runs, and ought to run, in the manner in which it has been accustomed to run." "No riparian proprietor has the right to use the water to the prejudice of other proprietors above or below him. He has no property in the water itself, but a simple usufruct while it passes along. 3 Kent's Com. 439." Does the petition show on its face a right of the plaintiff to enjoin the defendant? It is alleged that since the defendant's track and trestle and fill were washed away on April 7, 1938, the defendant has begun to rebuild the same across Faucett Creek in the same location, using the same materials, providing the same opening for the creek to flow under, and purposes to continue the maintenance of its track and trestle across the creek as it has done for the past twenty-five years; that the plaintiff owns other valuable lands below the trestle, and if the threatened maintenance of the trestle be carried out these other lands will likewise be washed and flooded, and damages to his lands will recur from year to year, which will give rise to a multiplicity of suits; that such maintenance of the trestle will constitute a constantly recurring trespass on the rights of the plaintiff from time to time; and that the damages already done and threatened, by reason of future acts of defendant's negligence, are irreparable. The plaintiff prays that the defendant be enjoined from erecting and maintaining its trestle in the manner it is now undertaking and threatening to do.

To wrongfully turn water on the lands of another is a nuisance. Code, § 72-101. A suit to enjoin is a recognized remedy for a nuisance. 2 Cooley on Torts, § 316. It is also a trespass. 1 Cooley on Torts, § 165. Our Code declares: "Equity will not interfere to restrain a trespass, unless the injury shall be irreparable in damages, or the trespasser shall be insolvent, or there shall exist other circumstances which, in the discretion of the court, render the interposition of the writ necessary and proper, among which shall be the avoidance of circuity and multiplicity of actions." § 55-104. The petition shows that the maintenance of the nuisance had already caused considerable damage to the plaintiff's lands; that the damage increased from year to year; that the opening

under the defendant's trestle became lessened year by year, thereby flooding more of his lands as time went on; that plaintiff had other lands bordering on this same stream, which would be destroyed in the same way; and that the defendant was threatening to erect its trestle over Faucett Creek in the same manner as it was before. We think the plaintiff, by his allegations and prayers, brings himself within the provision of the Code section. See the following decisions holding that injunction was a remedy that could be invoked in like cases: *Persons* v. *Hill,* 33 *Ga. Supp.* 141; *Chestatee Pyrites Co.* v. *Cavenders Creek Gold Mining Co.,* 118 *Ga.* 255 (45 S. E. 267). As to irreparable damages, see *Kavanagh* v. *Mobile & Girard R. Co.,* 78 *Ga.* 271 (2 S. E. 636); *Woodall* v. *Cartersville Mining &c. Co.,* 104 *Ga.* 156 (30 S. E. 665); *Camp* v. *Dixon,* 112 *Ga.* 872 (38 S. E. 71, 52 L. R. A. 755). As to a threatened continuous trespass as ground for injunction, see *Martin* v. *Pattillo,* 126 *Ga.* 436 (55 S. E. 240); *Caverly* v. *Stovall,* 143 *Ga.* 705, 708 (85 S. E. 844); *Cartledge* v. *Ashford,* 152 *Ga.* 674 (110 S. E. 907); *Burns* v. *Hale,* 162 *Ga.* 336 (133 S. E. 857). As to the avoidance of a multiplicity of suits as ground for the relief sought, see *Mayor &c. of Waycross* v. *Houk,* 113 *Ga.* 963 (39 S. E. 577); *Town of Rentz* v. *Roach,* 154 *Ga.* 491 (5) (115 S. E. 94). Since the allegation is that the defendant "has now begun to rebuild" the trestle, and the prayer is that it be "restrained from erecting and maintaining its trestle in the manner it is now undertaking and threatening to do," the injunction sought can not be said to be mandatory in character. See *Goodrich* v. *Georgia R. &c. Co.,* 115 *Ga.* 340 (41 S. E. 659); *Oostanaula Mining Co.* v. *Miller,* 145 *Ga.* 90 (88 S. E. 562).

■ The petition alleged that the trestle and abutments were built before 1910, the trestle being twenty feet in width and about seven feet above the water level; that in 1910 these were partially washed away, but rebuilt in practically the same manner; that there had been a gradual filling up of the creek under the trestle until about July, 1937, the space thereunder became entirely too small to carry off the water; and that on April 7, 1938, the sand, debris, etc., that had collected on the upper side of the trestle against the embankments and abutments had caused partial obstruction to the flow of the stream. By amendment the plaintiff struck his allegation that in 1910 the defendant rebuilt

the trestle and fill in much the same manner as originally constructed, and alleged that in 1910 the defendant built rock pillars on each side of the run of the creek to support the steel girders, said pillars having been placed by the defendant at the same angle that the creek ran in approaching the trestle, so that the water would flow freely and collect no debris; that an opening was also left on the north side of the creek for flowage of the creek in time of flood, and placed piling consisting of wooden posts about one foot in diameter was so set under the railroad-track that the creek in floodtime would flow under the trestle and between the piling in such a manner as to carry with it such trash and debris as was in the swollen creek, without lodging against the piling, the opening under the trestle being swept clean by the flow of the water, and no substantial damage was done to the plaintiff's property; that in the year 1919 the rock pillars were removed, and wooden pilings were put down in such a manner as not to allow the flowage of the creek under the bridge, and not to carry off the trash and debris in times of flood, the openings between the pilings being from two to six feet. Counsel for the defendant insist that under these allegations the plaintiff is estopped by laches from maintaining his suit. We see herein nothing to call for the application of the doctrine of estoppel. The case of *Southern Marble Co.* v. *Darnell,* 94 *Ga.* 231 (21 S. E. 531), was where an owner of a mill site brought suit against one who by means of a permanent ditch diverted therefrom, at a point above the owner's land, water in a stream which would otherwise have reached the mill site. It was held that the plaintiff was estopped to claim damages, because when the ditch was being dug he knew the purpose intended, and not only stood by and saw the work going on, but was actually employed by the defendant to assist in digging the ditch and was paid for this service. In *Holt* v. *Parsons,* 118 *Ga.* 895 (45 S. E. 690), injunction was sought against levy of a county tax with which to build a court-house, and was denied because it was held that the plaintiffs had been guilty of delay and laches in asserting their rights, and had negligently suffered large expenditures to be made by the county authorities, on whom great injury would be inflicted if the injunction were granted. The other decisions cited by counsel were in paving cases, where relief was denied because of laches, the property owners standing by and seeing large sums of money

expended. None of them is authority for holding that the plaintiff in the instant case, under the facts which he alleges, is not entitled to maintain his suit. On the contrary, the contention in this regard is in principle directly contrary to what was held in *McNabb* v. *Houser*, 171 *Ga.* 744 (156 S. E. 595, 74 A. L. R. 1122). It was there held: "Something more than mere passivity or inaction upon the part of a riparian owner of lands upon a stream, while another is cleaning out and constructing a ditch at large expense for the purpose of diverting water from such stream, is generally necessary to create an estoppel, although the riparian owner may know of such expenditure and make no objection. In cases of silence there must be not only the right but the duty to speak, before a failure to do so can estop the owner; and where the owner merely stands by and fails to object while the improvements are being constructed, he is not estopped from obtaining relief in equity against the diversion of the water, where the expenditure is made with notice, actual or constructive, of his superior rights. (a) Injunction will lie even where the diversion of the water was complete at the time the application for injunction was made, when it appears that the same was promptly made, and there was no unnecessary delay."

In *Southern Railway Co.* v. *Cook*, 117 *Ga.* 286 (43 S. E. 697), suit was brought for damages alleged to have been sustained by reason of the defendant having maintained a nuisance in keeping a dam across a stream on the plaintiff's land, as a result of which his field was inundated and rendered unfit for cultivation. It was held that every continuance of a nuisance which is not permanent, and which could and should be abated, is a fresh nuisance for which a new action will lie. Consequently we must hold that suit may be maintained for damages growing out of a nuisance of the character indicated, where the damages sued for were inflicted within four years before the time of filing suit, though the act which originally caused the nuisance was not done within the period of limitation of the action. *Danielly* v. *Cheeves*, 94 *Ga.* 263 (2) (21 S. E. 524); *City Council of Augusta* v. *Marks*, 124 *Ga.* 365 (2) (52 S. E. 539), and cit.; *Gabbett* v. *Atlanta*, 137 *Ga.* 180, 183 (73 S. E. 372), and cit.

In *Doster* v. *Brown*, 25 *Ga.* 24 (71 Am. D. 153), Judge McDonald, delivering the opinion, said: "While every shower of rain

that falls upon the earth is the act of God, in contradistinction to the act of man, yet an ordinary freshet is not the act of God in the legal sense which protects a man against responsibility for the non-performance of a contract like that made by this plaintiff." In *Central Railroad &c. Co.* v. *Kent,* 87 *Ga.* 402, 412 (13 S. E. 502), this court approved a ruling of the Supreme Court of Minnesota in *Gates* v. *Southern Minn. Ry. Co.,* 28 Minn. 110 (9 N. W. 579), wherein it was held that "Railroad companies are bound to take notice of the topography of the country along their lines of road, and to take notice of the climate in which their roads are, and about the storms and floods that annually occur in those localities, and make all necessary guards against danger caused by ordinary and usually severe storms of the locality where the road is located." An allegation that heavy rains fell, causing the creek to swell to the extent that great volumes of muddy water, debris, logs, and other obstructions were carried by its swollen waters, does not show on its face an act of God, as that term is used in our laws, especially in view of other allegations to the effect that due to the act of the defendant, in having too small a passageway under its trestle between fills, it had partially obstructed the natural flow of the stream. An act of God excludes all idea of human agency. *Fish* v. *Chapman,* 2 *Ga.* 349 (46 Am. D. 393); *Central of Ga. Ry. Co.* v. *Hall,* 124 *Ga.* 322, 332 (52 S. E. 679, 4 L. R. A. (N. S.) 898, 110 Am. St. R. 170, 4 Ann. Cas. 128). If the proximate or immediate cause of the overflow and consequent damage to the plaintiff's land was the result of the defendant's fault in omitting to keep the opening under the trestle large enough to accommodate the waters of the creek in times of heavy rains, the existence of unusual rainfalls will not relieve it from liability for damages. Compare *Mayor &c. of Savannah* v. *Cleary,* 67 *Ga.* 153; *Sharp* v. *Parker,* 108 *Ga.* 805 (34 S. E. 135); *Roberlson* v. *Arnold,* 182 *Ga.* 664 (186 S. E. 806, 106 A. L. R. 681). On this question we approve the statement found in 27 R. C. L. 1107, § 40, as follows: "Some courts have attempted to fix the meaning of 'extraordinary' in relation to the frequency of occurrence, holding that such floods as are not of annual occurrence, are extraordinary and the act of God; but the true rule would seem to be that the mere fact that the flood does not occur annually will not make it an extraordinary one, if from the climatic conditions and the character of the coun-

try it is likely to occur, and has been known to occur, with sufficient frequency to warn those living in the vicinity that it may occur at any time. While it is the general rule that where rains are so unprecedented, and the flood caused thereby so extraordinary, that they are in legal contemplation the act of God, one obstructing a natural watercourse will not be held liable, it must appear, in order to give immunity under that rule, that the act of God is not only the proximate cause but the sole cause of the injury. And where an unprecedented flood is the cause of the injury, but the prior, coincident, or subsequent negligence of a person obstructing a natural watercourse so mingles with it as to be an efficient and co-operating cause, the obstructor will be held responsible, because his act is causa sine qua non. . . Whether an extraordinary flood is an 'act of God,' as that expression is used in the law, is a mixed question of law and fact. The defining and limitation of the term, its several characteristics, its possibilities as establishing and controlling exemption from liability, are questions of law for the court; but the existence or non-existence of the facts on which it is predicated is a question for the jury. It has accordingly been held that the court can not, in an action for damages alleged to have been caused by the negligence of one obstructing a natural watercourse, wherein the defense is that the flood was so extraordinary and unprecedented as to be deemed the 'act of God,' determine that the flood was unusual or unprecedented, since that is the determination of a fact depending on evidence to establish it. The province of the court is to define in proper instructions what would be regarded in such an instance by the law as an act of God, and leave it to the jury to determine whether the evidence is sufficient to establish that the flood in question was an ordinary flood or was an extraordinary flood so unusual and unprecedented in its nature as to amount in law to an act of God."

Although it did not appear on the face of the petition that the damages set forth were occasioned by an act of God, the defendant set up affirmatively by way of defense that "there was an unusual, unprecedented downpour of water and rain from the clouds, such as has never been known before or since in the history of the railroad or the county in which it is located," etc. The plaintiff assigns error on the ruling of the judge in refusing to strike so much of the answer of the defendant as contained the

above-quoted words. The ruling was correct. A rainstorm may be of such an extraordinary character and so unprecedented that human skill and foresight, by the exercise of proper care and precaution, can not provide against it. If injuries result therefrom, such injuries will be attributable to the act of God, and not to the negligence of the defendant. *Mayor &c. of Savannah* v. *Cleary,* supra; *Georgia R. &c. Co.* v. *Bohler,* 98 Ga. 184 (26 S. E. 739), and authorities cited, supra.

■ The fact that in 1887 the defendant's predecessor in title condemned a portion of the plaintiff's land where the railroad now runs, and that ever since the defendant has operated its railroad over the same span over Faucett Creek, is not proper matter of defense to the present suit. That the predecessor condemned a part of the plaintiff's land for railroad purposes, and used the part so condemned, did not authorize it or its successor in title to maintain a nuisance to the damage of the plaintiff's other near-by property. A railroad company, in its construction and maintenance of its culverts, trestle, and embankments, is bound so to construct and maintain them that the accumulation of water from freshets which in the usual course of events are likely to occur will not cause breaks in its embankments and consequent inundation of lands below. *Georgia R. &c. Co.* v. *Bohler,* supra. Though the defendant is a railway corporation authorized by its charter to condemn land and to build and operate a railroad, it does not follow that railroad works authorized by statute can not become a nuisance by their improper construction or by their negligent and improper use after a proper construction. *Ga. R. &c. Co.* v. *Maddox,* 116 *Ga.* 64, 69 (42 S. E. 315). It was erroneous to overrule the demurrer to this portion of the answer.

■ It is insisted by the defendant that since it appears from the petition that it has maintained its trestle across the creek for more than twenty years, it has acquired a prescriptive easement thereto, and therefore has acquired the right to throw water on the lands of the plaintiff. We think the insistence contains a non sequitur. Its right to maintain a trestle with embankments on either side is not in dispute. Nor will it be denied that the right to throw water on the lands of another may be acquired by prescription. But it does not follow that because the defendant has had a trestle over this creek for more than twenty years it has thereby acquired the

right to throw water on the adjacent lands. "An incorporeal right which may be lawfully granted, as a right of way or the right to throw water upon the land of another, may be acquired by prescription." Code, § 85-409. Title by prescription is "the right to property which a possessor acquires by reason of the continuance of his possession for a period of time fixed by the laws." § 85-401. Let it be noted that the petition nowhere even hints that the defendant has ever been in possession of the land for the injuries to which this suit is brought. "Possession to be the foundation of a prescription must be in the right of the possessor, and not of another; must not have originated in fraud; must be public, continuous, exclusive, uninterrupted, and peaceable, and be accompanied by a claim of right. Permissive possession can not be the foundation of a prescription, until an adverse claim and actual notice to the other party." Code, § 85-402. As early as the case of *Hendrick* v. *Cook, 4 Ga.* 241, 256, this court said: "Every proprietor who claims a right, either to *throw the water back above,* or to diminish the quantity of water which is to descend below, must, in order to maintain his claim, either prove an actual grant or license from the proprietors affected by his operations, or must prove an uninterrupted enjoyment of twenty years." *Ellington* v. *Bennett, 59 Ga.* 286, was a suit for the overflowing of a mill-dam. The question of a prescriptive easement was directly before the court. It was held, that, "until the water was raised so as to inflict damage on him, he had no right of action, and of course not until then did any prescription begin to run as to him. Twenty years from that time would be requisite to complete the prescriptive period, and bar him from controverting the easement." In the opinion it was observed: "The true rule as to prescription is, that the right is measured by actual user, and not by capacity for more extended use. 51 *Ga.* 378; 25 Penn. 519; 52 N. H. 262; Angell on Watercourses, sec. 379; Wood on Nuisances, sections 420, 422, 704. And the right does not begin to run until an actionable injury has been inflicted." The later decisions of this court are in line with the foregoing. *Athens Mfg. Co.* v. *Rucker,* 80 *Ga.* 291 (4 S. E. 885); *Williams* v. *Southern Railway Co.,* 140 *Ga.* 713 (79 S. E. 850). The latter case is directly in point. Williams brought suit against the Southern Railway Company, to recover for injury to certain farm lands, alleged to have been caused by the embankments of

the railway company ponding the water on the land and causing the soil and sediment to accumulate in the ponds, and damaging the plaintiff's land. The evidence tended to show that the embankment and culvert had been constructed by the predecessor in title of the defendant, about twenty-five years before the filing of the suit, and that the defendant had maintained the embankment and culvert in practically the same condition they were in when constructed. The defendant in its answer averred, among other things, that it had the right by prescription to maintain its embankment and culvert as it now exists, with the consequent ponding of the water and seepage caused thereby. Verdict was for the defendant. The plaintiff's motion for new trial was overruled, and that judgment was reversed. In the decision this court held: "The petition in this case, properly construed, is an action for the recovery of damages resulting from the maintenance of a continuing nuisance. . . In such a case prescription does not run in favor of its maintenance, though damages for the maintenance can not be recovered further back than four years from the bringing of the suit." In the opinion this court said: "In Joyce on the Law of Nuisances, § 57, page 95, it is said: 'And where, in the case of an alleged nuisance by a railroad by the maintenance of a culvert, the acts complained of, from which the nuisance resulted, were not a complete and permanent injury at the time the railway and culvert were erected, but became so by reason of the occurrence of future events, it was decided that, the nuisance being a constantly increasing one, the remedy of the party injured was not lost by prescription.' A person never can, by prescription or otherwise, acquire a right to maintain a nuisance." Citing *Bonner* v. *Welborn,* 7 *Ga.* 296; and *City Council of Augusta* v. *Lombard,* 101 *Ga.* 724, 728 (28 S. E. 994).

In order for the petition to have been fatally defective for the reason that it showed a prescriptive easement by the defendant, it must have shown all the elements as detailed in the Code, § 85-402. This the petition in the instant case does not do. Almost all the cases on this subject examined by us were cases where land was flooded by a mill-dam, and the land was completely or almost completely covered with water for a period of twenty years or more. None of the decisions next hereafter mentioned, to which we are referred by counsel for the defendant, militate against the

view above expressed. *Baker* v. *McGuire,* 53 *Ga.* 245, was a mill-dam case. It was there ruled that the capacity of the dam from its height is the measure of the easement. The judgment was reversed because the trial court charged the jury contrary to the rule that, "When a mill-dam of a certain height exists, and with it the right to back water upon land according to the capacity of the dam, and from want of repair, or leakage of the dam, or other cause, the dam does not gather such a head of water as it might, and thus the back-water is usually less than the height of the dam would warrant, the owner of the mill has a right to build a new dam of the height of the old one, or to repair the old one; and if thus the extent of the back-water is increased, the owner of the mill is not liable for damages caused by the increased overflow." In *Monroe* v. *Estes,* 139 *Ga.* 729 (78 S. E. 130), following *Baker* v. *McGuire,* supra, it was simply recognized that "If the defendants had maintained the lower dam for a period of twenty years at a certain height and with a certain capacity, and had raised the water in the stream up to the capacity of the dam, they would have acquired a prescriptive right to back the water in the stream to the full capacity of the dam thus maintained." The ruling in *Terrell* v. *Terrell,* 144 *Ga.* 32 (85 S. E. 1005), went no further than in *Monroe* v. *Estes,* supra, the holding being: "It is settled doctrine in this State that the owner of a mill-dam who maintains the same at a given height for a period of twenty years, which dam during that period causes water to back and overflow land of another, may obtain a prescriptive easement of flowage over the lands of the upper riparian owner," citing *Columbus Power Co.* v. *City Mills Co.,* 114 *Ga.* 558 (40 S. E. 800), and *Monroe* v. *Estes,* 139 *Ga.* 729 (78 S. E. 130). In *Watkins* v. *Pepperton Cotton Mills,* 162 *Ga.* 371 (134 S. E. 69), occurs the statement, which no one denies, that one can acquire by use and possession a mere easement over land. It affirmatively appeared in that case, however, that the easement as originally constructed had been in use by the defendant for more than twenty-six years. In *Hogan* v. *Cowart,* 182 *Ga.* 145 (184 S. E. 884), the incorporeal right dealt with was an agricultural ditch, the ruling being that an owner of land may acquire by prescription an easement over the lands of another; and further, that the prescriptive period of adverse use was twenty years, unless under color of title.

■ The amendment of the petition, the contents of which are summarized in division 2 of this opinion, was demurred to because it set forth a separate and distinct cause of action, and because it contained averments of fact contradictory to those appearing in the original petition. The original petition seeks redress for an injury alleged to have been inflicted on April 7, 1938, occasioned by the maintenance by the defendant of a trestle and approaching abutments that did not leave room enough for the waters of the creek and the trash, logs, and debris occasioned by the swollen waters in times of unusual rains to pass under the trestle, the result being that the flow of the stream was almost stopped, and became impounded, and finally washed away the dirt portion of the embankment, thereby releasing the entire volume of water collected behind it, to the damage of plaintiff in the manner and amount stated. The amendment did not change the cause of action. The nuisance, as to the effect of which complaint is made, was the same. The amendment did strike certain allegations in the petition as to the history of the building of the trestle, and substituted other allegations, but the cause of action remained the same. Was the amendment demurrable because it contained averments contrary to those appearing in the petition? Counsel for the defendant relies on certain language of Fish, Justice, in *Shepherd* v. *Southern Pine Co.,* 118 *Ga.* 292 (45 S. E. 230). The ruling in that case was that the petition set forth no cause of action, and therefore could not be made the basis of an amendment the purpose of which was, not merely to amplify or perfect the allegations relied on by the plaintiff when he brought his suit, but to substitute an altogether different statement of facts. In the opinion it was said that the proffered amendment was a proposal "to traverse the truth" of the statement of facts alleged in the petition, and to substitute another. But the learned jurist never meant to announce that an amendment will not be allowed that traverses the truth of an allegation contained in the original petition. In *City of Columbus* v. *Anglin,* 120 *Ga.* 785 (48 S. E. 318), it was said: "So long as the facts added by the amendment, however different they may be from those alleged in the original petition, show substantially the same wrong in respect to the same transaction, the amendment is not objectionable as adding a new and distinct cause of action." See also *Harris* v. *Central Railroad Co.,* 78 *Ga.* 525 (3 S. E. 355);

*Mims* v. *Jones,* 135 *Ga.* 541 (69 S. E. 824) ; *McGinly* v. *Keith,* 182 *Ga.* 869 (187 S. E. 79), where it was held that the amendments to the answer of defendants were not objectionable because of the changes made by them, although there were certain absolute contradictions between them and the allegations and admissions originally made by the defendants.

█ In the opinion as originally rendered we said that it was inferable from the order dismissing the action that the judge did not actually pass upon the special demurrers, and therefore that we should not undertake to do so, but in remanding the case would leave open for subsequent determination by the trial court such questions as were presented by the special demurrers. We cited *Simpson* v. *Sanders,* 130 *Ga.* 265, 271 (60 S. E. 541). In a motion for rehearing counsel insist that under this record this court is bound to presume that the judge of the superior court did pass upon all the demurrers, general and special; and that the judgment should be affirmed if the petition was properly dismissed for any reason set forth in any ground of demurrer. Upon consideration of the motion, we have concluded to examine into each of the grounds of special demurrer. Paragraphs (a), (b), (c), and (d) of ground 1 of the "special demurrer" are in reality but amplifications of the contentions raised by the general demurrer, and are covered by our rulings already made. This is likewise true of paragraphs (a), (b), and (c) of ground 3; and of paragraphs (a), (b), (c), (d), (f), and (g) of ground 5, grounds 6, 7, 8, and 9. Paragraph (e) of ground 1 assumes that the plaintiff is suing for damages to his land that occurred before April 7, 1938, and calls on him to show the amount of damages for each of four years. This is an erroneous assumption, since the plaintiff is only suing for injuries alleged to have been received on April 7, 1938. This paragraph of the demurrer is without merit.

Ground 2 of the special demurrer is directed to paragraph 18 of the petition, wherein it is alleged in substance that the plaintiff, before the date of the alleged injury, notified the defendant in writing of the condition of the fill and trestle, and, the defendant failing to remedy the same, he notified it in writing the second time, protesting against its continuation in the condition it was in; but the defendant continued to fail to make any effort to remedy the same. The demurrer to this paragraph is based on the conten-

tion that the allegations therein are immaterial and prejudicial. There is a prayer in the petition for exemplary damages for the defendant's "wilful trespass upon plaintiff's rights by the maintenance of its said trestle after having been notified of its condition and of its causing damages to plaintiff's land as herein alleged and set out." We think this ground of demurrer should be overruled.

Paragraph (d) of ground 3 of the demurrer is directed to a part of paragraph 22 of the petition, where it is alleged that the plaintiff, during the past four years, called the defendant's attention "to the great damage its negligent maintenance of said obstruction and trestle in Faucett Creek was causing him as herein alleged." This was demurred to on the ground that no dates were given, nor the name of the representative or officer of the defendant to whom the notice was given. This paragraph of the demurrer was not well taken, in view of the allegations in paragraph 18 of the petition. The dates were there given, and the further statement there made that the notice was given by writing "the defendant at its office in Louisville, Kentucky."

Paragraph (b) of ground 4, which complains that the petition fails to allege whether it is a public or a private nuisance, is without merit.

Ground 10 of the demurrer is addressed to the prayer for exemplary damages. We think that the allegations with respect thereto, which have been heretofore referred to, are sufficient to support the prayer; and hence that portion of the demurrer should be overruled.

When the amendment to the petition was allowed, the defendant filed a special demurrer and renewed its general and special demurrers which had been theretofore filed. We have in subdivision 8 of the opinion ruled on the only two grounds of the demurrer to the amendment that raised any questions of substantive law, and the only ones that were argued, except in the briefest and most general way, in the elaborate brief and argument of counsel for the defendant. But we have scrutinized carefully the remaining grounds of this demurrer. Some of them are grounds appropriate to a general, not a special demurrer, and have already been dealt with in substance. Others call for more particular and minute information as to the depth of the stream, the depth of the soil that was washed away, the identical place where the holes were washed

out of the land, the number of the holes, etc. We do not think the petition defective in any manner pointed out by any of these demurrers. We think it sufficiently certain and definite, and that all of the special demurrers should be overruled.

*Judgment reversed. All the Justices concur.*