WOODY et al. v. DURHAM.

No. 15495.

Court of Civil Appeals of Texas.

Fort Worth.

March 19, 1954.

Rehearing Denied April 23, 1954.

220

Simon & Simon, and Henry W. Simon, Fort Worth, for appellants.

C. O. McMillan, Stephenville, for appellee.

BOYD, Justice.

Appellants, Ouida Woody and husband, M. M. Woody, filed this suit for injunction against appellee, Earnest Durham, to enjoin him from diverting water from Stroud's Creek to his nonriparian land. Appellant, Virgil A. Andrews, intervened and also prayed for such injunction. Temporary injunction was refused by the court, and upon trial on the merits before a jury, judgment was rendered that appellants take nothing.

It was alleged and established that appellants owned lands adjoining said creek; that at the time of the acts complained of and at the time the suit was filed, appellee owned no land adjoining said creek; that on several occasions in 1952 and 1953 appellee, at a point upstream from appellants' lands, erected a six or eight inch pipeline between said stream and his land, and by the use of a pump and the pipeline diverted large quantities of water from the stream to his nonriparian land; that on some occasions when appellee was pumping water, the stream would cease to flow; that the pumping would be continued, with some interruptions, for ten days at a time. Appellee testified that at times he pumped about twice as much water as was flowing in the stream when he would begin, and the flow had stopped as long as five days after he had pumped from the stream. He said he pumped 800 gallons of water per minute.

It was in evidence without dispute that in 1952 appellant M. M. Woody asked appellee to stop taking water from the stream; that appellee said he would stop; that he did stop, but several weeks later he began pumping again; he was again asked by Woody to stop taking water from the stream, and again promised to do so. Again he started pumping, and when asked by Woody for the third time to stop, appellee declined to say whether he would or would not. Appellee testified that his recollection was that he was pumping when citation was served upon him in this case.

Appellants Woody did not live on their farm, and had no tenants or livestock thereon. But it was undisputed that they were building up the soil, had built fences, had inaugurated a grass program, and intended to put livestock on the farm when they secured a good stand of grass.

It was uncontroverted that when the stream stopped flowing, a scum collected on the water in the holes, and gave off offensive odors. Appellant Andrews, who watered his livestock from Stroud's Creek, testified that the stagnant water was less beneficial to livestock than running water.

The jury answered that the diverting of the water by appellee materially diminished the normal flow of the water in Stroud's Creek, but that appellants had not been deprived of any of the natural uses of the water in said creek, "natural uses" being defined in the charge as "use

of water for drinking, washing, cooking, and other domestic purposes and for live-stock."

Appellee testified that he had no intention of diverting any more water in the manner complained of.

The only question for determination therefore is whether the injunction should have been granted.

We have reached the conclusion that appellants brought themselves within the rule providing for equitable relief to prevent diversion of water.

■ Riparian rights depend upon ownership of land which is contiguous to the water. Richter v. Granite Mfg. Co., 107 Tex. 58, 174 S.W. 284, L.R.A.1916A. 504, citing Farnham on Waters, sec. 463, and Gould on Waters, sec. 148. It therefore appears that appellee was not a riparian owner.

■ It seems to be the law that damage to the present or potential enjoyment of the property of a riparian owner by diversion of water from a stream gives rise to a cause of action for injunction. Baker v. Brown, 55 Tex. 377. It seems equally clear that an injunction will be granted to restrain the wrongful continuing diversion or threatened diversion to prevent irreparable damage, or to avoid vexatious litigation or a multiplicity of suits.

■■ Where the result of the diversion is an unreasonable diminution of the water supply, equity will intervene to restrain an upper riparian owner; and there would appear to be stronger reason for such action when the water is diverted by one who is not a riparian owner, or used on nonriparian lands. It has been held that an injunction will lie to restrain an unlawful interference with water rights even if the owner contemplates no immediate exercise of such rights. This may be done to prevent their loss by adverse user. 56 Am.Jur., p. 723, sec. 269, and

p. 770, sec. 331, and authorities there cited; Pine v. Mayor, etc., of City of New York, C.C., 103 F. 337; Burden v. Stein, 27 Ala. 104, 62 Am.Dec. 758. This is so, even though the appropriator is an upper riparian owner, and the complainant has no immediate use for the water and is not presently damaged. Robertson v. Arnold, 182 Ga. 664, 186 S.E. 806, 106 A.L.R. 681; Town of Gordonsville v. Zinn, 129 Va. 542, 106 S.E. 508, 14 A.L.R. 318; Hall v. Carter, 33 Tex.Civ.App. 230, 77 S.W. 19, writ refused; Clements v. Watkins Land Co., 36 Tex.Civ.App. 339, 82 S.W. 665; King v. Schaff, Tex.Civ.App., 204 S.W. 1039.

In Humphreys-Mexia Co. v. Arseneaux, 116 Tex. 603, 297 S.W. 225, 53 A.L.R. 1147, it was intimated but not decided that injunction would lie to prevent diversion of water in such manner as would set in motion the statute of limitations, irrespective of actual damage.

■ We cannot agree with appellee that this is a suit to enjoin something that is past and fully accomplished. Nor was it necessary for appellants to allege and prove that appellee had threatened to divert more water in the future. After promising earlier to stop, appellee evidently changed his mind. He does not now say that he will not divert any more water from Stroud's Creek to his nonriparian lands. The most he will concede is that he does not intend to divert any more water. He might conceivably change his mind again. He did not even plead that he was through diverting water from said stream. We do not believe that appellants ought to be put to the trouble and expense of filing a suit each time appellee starts pumping water from that creek, or to risk losing their rights by prescription, and we think the injunction should have been granted.

The judgment is reversed and here rendered that appellee be enjoined from diverting water from Stroud's Creek to his nonriparian lands.