### HEITKAMP v. KRUEGER.

No. 10200.

Court of Civil Appeals of Texas.

Austin.

Feb. 17, 1954.

Rehearing Denied March 10, 1954.

Edward Badouh, R. A. Bartram, New Braunfels, for appellant.

Moursund, Ball, Moursund & Bergstrom, San Antonio, for appellee.

HUGHES, Justice.

This is a suit for recovery of damages to an automobile owned by appellant, Lee Roy Heitkamp, alleged to have resulted from a collision between such car and a 1951 Chevrolet Pick-up truck owned by appellee, B. A. Krueger doing business as Krueger Chevrolet Company in New Braunfels, Texas, where the collision occurred May 1, 1952.

At the time of the collision appellant's car was, with his consent, being driven by Patsy Ellen Stratemenn and appellee's truck was being operated by his regular employee, Bobby Wayne Long.

Trial was to the court without a jury.

When the evidence was all in appellee moved for judgment on the ground, among others, that the evidence failed to show that, at the time of the collision, Bobby Wayne Long was then his employee or, if so, that he was then acting within the scope of his employment.

This motion was granted as shown by the judgment from which we quote:

"After the evidence had been heard and both plaintiff and defendant had rested and closed the defendant filed motion for judgment. The court having considered such motion for judgment of the defendant, the evidence, written briefs and arguments of counsel, is of the opinion and finds that such motion is well taken and should be granted, for the reason that Bobby Long, the driver of the truck owned by defendant, B. A. Krueger, was not at the time and place in question acting as an agent or servant of said defendant, but as the servant of another, and therefore said defendant is not responsible to plaintiff for negligent acts, if any, alleged herein to have been committed by the said Bobby Long.

"It is, therefore, Ordered, Adjudged and Decreed by the court, that the plaintiff, Lee Roy Heitkamp, take nothing by his suit against B. A. Krueger, doing business as Krueger Chevrolet Company, and that all costs of court be paid by plaintiff, Lee Roy Heitkamp, for which let execution issue."

No separate findings of fact or conclusions of law were requested of or made by the trial court.

Appellant presents a single point of error which is:

"The trial court erred in granting defendant's motion for judgment because the finding that the driver of the truck was not at the time and place in question acting as agent or servant of

the defendant, but as the servant of another, is so contrary to the overwhelming weight of the evidence as to be clearly wrong."

If we sustain this point appellant still must prevail on other issues before he can recover and, of course, there is no reason for us to consider this point unless we have authority to order a reversal to determine these other issues in the event the point is sustained. That we do have such authority is held in Carruth v. Valley Ready-Mix Concrete Co., Tex.Civ.App.Eastland, 221 S. W.2d 584, writ ref., and by the Fort Worth Court in Warren v. Haverkorn, Tex.Civ. App., 191 S.W.2d 793. In each of these cases the Courts of Civil Appeals construed the trial court judgments to be based upon one issue only and as excluding other issues presented which were essential to a judgment for appellant and as to which the appellate courts held that the facts were not fully developed.

█ We construe the trial court's judgment as being based solely upon the issue of agency and while we find the case to have been fully developed on all issues we are of the opinion that if the trial court erred on this one issue that a reversal may be ordered.

We do not consider this conclusion to be in conflict with the opinion of the Supreme Court in Parker Petroleum Company v. Laws, 242 S.W.2d 164, where it was held we erred in construing the trial court's judgment as not being decisive of all issues in the case.

The evidence relating to the issue agency shows:

The Lions Club, a civic nonprofit organization, sponsored a clean up campaign in New Braunfels which was set for activization on May 1, 1952. A chairman was selected by the club who personally and through assistants invited local business concerns and citizens to participate in the drive. Appellee was called and asked to donate a truck and driver which he agreed

to do. Thereafter Mr. Krueger instructed his regular employee, Bob Long, to take the truck and report to the drive chairman at the town plaza for the purpose of taking part in the clean up campaign. Long did as instructed. He reported to the chairman on the morning of May 1st by whom he was assigned a district or designated portion of the city and two helpers and instructed to pick up all the trash and rubbish on the curbs, to carry it to the city dump and unload where directed and to return and repeat the process until the assigned area was clean.

While Long was engaged in this undertaking the collision occurred, such collision, however, having no direct connection with the removal of trash or rubbish.

Long received his regular compensation while engaged in the clean up work and was not otherwise paid therefor.

The ordinary business of appellee and his concern does not include hauling or picking up trash or rubbish.

█ The principles of law involved are well established and are fully discussed in numerous authorities including Corpus Juris Secundum and Blashfield Cyclopedia of Automobile Law and Practice from which for convenience we will quote brief statements considered pertinent here:

"A master is liable for the tort of his servant where the tortious act is done in obedience to his express orders or directions, even though the service is not within the line of the servant's usual duties, * * *."[1]

"The Corpus Juris statement, which has been characterized as clear and concise, is that a servant may be loaned or hired by his master for some special purpose so as to become, as to that service, the servant of the person to whom he is loaned or hired, and to impose on the latter the usual liabilities of a master, the general or original master being correspondingly relieved. While it has been said that a deter-

---

1. 57 C.J.S., Master and Servant, § 557, p. 269.

mination of this matter calls for the consideration of many different factors, and that every case presents facts peculiar to itself, the usual test of liability for the acts of the servant is whether in the particular service in which the servant is engaged or which he is requested to perform he continues liable to the direction and control of his originial master or becomes subject to the direction and control of the person to whom he is loaned or hired, or who requests his services; * * *."[2]

"It is not so much the actual exercise of control which is decisive as the right to exercise such control. In order to escape liability, the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under the control of a third person; and it is necessary to distinguish between authoritative direction and control and mere suggestions as to details or the necessary co-operation where the work furnished is part of a larger operation. A servant of one employer does not become the servant of another for whom the work is performed merely because the latter points out to the servant the work to be done, or supervises the performance thereof, or designates the place and time for such performance, or gives the servant signals calling him into activity, or gives him directions as to the details of the work and the manner of doing it, or because the servants of the person for whom the work is being performed assist in the work."[3]

"One who furnishes a driver and team to another for the latter's use for a particular purpose is nevertheless liable for injuries from the acts of the servant while performing such services for the third person, provided exclusive control of the driver is not vested in the hirer. The test of liability turns on the question whether the employer or the hirer controls the movements of the driver. Liability of the general employer for the acts of the driver furnished with the team is not affected by the fact that directions are given the driver by the hirer as to when and where to go, that directions are given as to what shall be carried, * * *."[4]

"Where the owner of a motor vehicle transfers it with its driver to the service of a third person, liability as between him and the third person for the negligent acts of the driver in operating the vehicle depends on which of them has at the time the right to control the driver in the performance of his duties, not merely as to the result to be reached, but as to the method of reaching the result. If the owner has retained such control he remains responsible for the acts of the driver, although the driver is accompanied by the third person or by his servant, or although the third person has the right to control the route and destination or the loading or unloading of the vehicle. On the other hand, he is not responsible where the driver is, at the time of the alleged negligent acts, under the exclusive control of the person to whom the vehicle and driver have been furnished, although his wages may be paid by the owner * * *."[5]

"The general rule is that an owner of an automobile, who furnished it, with a chauffeur or driver, to another, to be used in the service of the latter, is liable for the negligence of the chauffeur in operating the machine while in such service, if the owner retains control over its operation or management, except in the matter of directing where the vehicle shall go, and the fact that the servant is partially under the control of the hirer does

---

2. 57 C.J.S., Master and Servant, § 566, pp. 284–286.

3. 57 C.J.S., Master and Servant, § 566, pp. 287–288.

4. 57 C.J.S., Master and Servant, § 566, p. 291.

5. 60 C.J.S., Motor Vehicles, § 436, pp. 1089–1091.

not release the owner from such liability."[6]

"Sole dominion and control on the part of the borrower is not, however, essential to relieve the owner and general employer from liability and to charge the borrower, as this would imply the right to hire and discharge, but, on the other hand, if the general employer has general control over a driver so lent, it is not material that the special employer is empowered to discharge him from the work.

"A driver loaned by the owner of an automobile with the car to another to do work for the latter may be the servant of the hirer, in the general performance of the work and remain the servant of the owner in the details of managing the automobile."[7]

"*Lender and borrower both liable.* Under some circumstances both the lender and the borrower may have control over the servant so as to render each of them liable for his conduct, for he may have been transferred to carry on work which is of mutual interest to them and to effect their common purpose, so that his service to the one does not involve abandonment of his service to the other."[8]

In Krausse v. Decker, Tex.Civ.App. Waco, 57 S.W.2d 1124, 1125, Id., Tex.Civ. App., 94 S.W.2d 1263, writ dism., the Court after stating general principles comporting with those quoted herein held that it was an issue of fact as to whose servant the driver of a car was under these circumstances:

"Appellant's wife, with implied consent and authority from him, sent his car and chauffeur to take Mrs. Forrester on a trip to secure the services of a housemaid. The substance of the conversation between her and Mrs. Forrester in that connection has been hereinbefore set out. The language used by appellant's wife did not purport to grant express authority to Mrs. Forrester to control and direct the chauffeur with reference to the manner in which he should operate the car on the trip. Neither did it indicate that such authority was withheld. The intention of the parties with reference to this issue must therefore be ascertained by inference from the language used and the attending circumstances."

When we consider the evidence, or lack of it, and reasonable inferences to be drawn therefrom in the light of the above authorities we are of the opinion that appellant's point should be sustained.

The nature of the undertaking by the Lions Club excludes any proprietary interest therein on its part. The project was one in which every good citizen of New Braunfels, including appellee, had the same civic pride and interest. It was a project voluntarily and unselfishly engaged in by appellee and others for the common good.

■ We believe the facts are convincingly clear that the services of Long were transferred to the Lions Club to carry on work to the mutual interest of appellee and the Club and to effect their common purpose so that Long's service to the Club did not involve abandonment of his service to appellee.

The court below should have disposed of all issues in the case and for this purpose the cause is reversed and remanded.

Reversed and remanded.

6. Blashfield Cyc. of Automobile Law and Practice, pp. 172–175.

7. Blashfield Cyc. of Automobile Law and Practice, p. 176.

8. 57 C.J.S., Master and Servant, § 566, p. 290.