Linda Lou FRIEDSAM, Appellant,

v.

E. J. ULBRICHT et al., Appellees.

No. 10564.

Court of Civil Appeals of Texas.

Austin.

June 18, 1958.

Rehearing Denied July 16, 1958.

Bryce A. Taylor, Burnet, for appellant.

Hammond & Hammond, Burnet, Julius F. Franki, Austin, for appellees.

ARCHER, Chief Justice.

This suit was instituted by appellees against appellant in trespass to try title alleging ownership of

"a. Three Hundred Eighty-six (386) acres of land, more or less, out of and part of the John B. Loveridge Survey No. 90 and the John St. Clair Survey No. 54, in Burnet County, Texas, being the same lands and premises described and conveyed by the deed dated June 18, 1947 from Linda Lou Friedsam to V. G. Heckman and E. J. Ulbricht, and recorded in Volume 99, Pages 373–4 of the Deed Records of Burnet County, * * *.

"b. All land in said Loveridge Survey and in that part of said St. Clair Survey which was formerly a part of the Friedsam Ranch in said County, which is adjacent and contiguous to the above described tract of Three Hundred Eighty-Six (386) acres more or less, and which lies and is situated below the contour line of 1,020 feet above mean sea level (being the contour line of *Lack* Buchanan).

"c. And all water rights, and all corporeal and incorporeal rights and hereditaments appurtenant and belonging to said Tract of Three Hundred Eighty-Six (386) acres more or less, and rights of ingress thereto from the waters of Lake Buchanan and egress therefrom to said Lake and upon the waters thereof, and all rights and privileges pertaining to said land which were reserved by the Grantors Cassie A. Friedsam and husband I. W. Friedsam in the instrument dated August 16, 1930 in which Emory, Peck and Rockwood Development Company is Grantee, and which is recorded in Volume 79, Pages 45–50 of the Deed Records of Burnet County, Texas, to which reference is made."

The petition alleged that appellees were dispossessed by the defendant. Prayer was had for title and possession, etc.

In the alternative plaintiffs sought relief under the Uniform Declaratory Judgment Act, Vernon's Ann.Civ.St. art. 2524–1 et seq., claiming that in a deed from appellant to appellees, dated June 18, 1947, the lands, together with all rights and privileges belonging thereto were conveyed to appellees and that appellant owned all of the land partitioned to her by an instrument dated March 29, 1947, and recorded in Volume 99, pages 61–64 of the Deed Records of Burnet County, subject to certain overflow privileges theretofore granted by her predecessors in title to Emory, Peck and Rockwood Development Company by an instrument dated August 16, 1930 and re-

corded in the Deed Records of Burnet County, which rights are now owned by the Lower Colorado River Authority.

The plaintiffs further contended that by virtue of the deeds and subject to the rights of the Authority that they own the title to the land in the surveys between the 1020 contour line and the bank of the Colorado River, or in any event have the vested right of free and unobstructed ingress to their said lands from the waters of Lake Buchanan, and to the free and unobstructed egress from their lands to the waters of Lake Buchanan, and to go upon the land in the surveys between the 1020 contour line and the water's edge of the lake for the purpose of reaching the lake from their lands, and have all of the rights with respect to their lands as were reserved by appellant's predecessor, and sought a declaration of their rights and legal status with respect to the matters in controversy, and pleading further in the alternative, contended that at the time appellant conveyed the property to appellees that the lake front property was being conveyed, and that they were acquiring lake front property, land fronting upon the waters of Lake Buchanan, with all rights and privileges thereto and the free use thereof and in this sought a reformation of the deed.

Defendant Friedsam answered by exceptions and a plea of not guilty and general denial.

On August 14, 1930, Cassie A. Friedsam and husband, for a stated consideration, by deed recorded in Volume 79, page 45, Burnet County Deed Records, granted Emory, Peck and Rockwood Development Company a perpetual easement and right to overflow, inundate and make use of for all purposes in connection with the operation of a dam to an elevation of 1020 feet above mean sea level certain lands, and other and more full recitations were made, and the lands were described, of which a part is the land in controversy in this case as lying beneath the waters of the lake.

The deed contains this reservation:

"Grantors reserve the right of access to the water line of the lake formed by such dam at all times and places, except over the embankment and dyke of grantee, and the right to use such land to the water's edge, grantors, however, waiving any damages, claims or liability by virtue of any act of grantee, its successors, assigns or agents, in raising and/or lowering the water level of the lake formed by said dam or any other act in connection with the construction, operation and/or maintenance thereof, it being agreed that the use of such land, or any part . thereof, by grantors, at any time when the use thereof is not desired by grantee, shall not be held adverse to the rights and titles herein granted."

Linda Lou Friedsam and Herman A. Friedsam were the children of and succeeded to the interests of Cassie A. Friedsam, and effected a partition of certain lands and the land involved herein was partitioned to Linda Lou Friedsam, also all land lying north of Highway 29 and covered by Inks Lake and Buchanan Lake, as per terms of contract between Cassie A. Friedsam and husband to and with Emory, Peck and Rockwood Development Company and recorded in the records of Burnet County.

On June 18, 1947, Linda Lou Friedsam conveyed to E. J. Ulbricht and V. S. Heckman for a stated consideration:

" * * * all those certain pieces, parcels or tracts of land, lying and being situated in the Western portion of the County of Burnet, State of Texas, adjacent to the waters of Buchanan Lake, and being out of and a part of the John St. Clair Survey No. 54 and John B. Loveridge Survey No. 90 and described by metes and bounds as follows:

"Beginning at the Northwest corner of the F. C. Rector Survey No.

403, which is the Northeast corner of the John B. Loveridge Survey No. 90;

"Thence East 5458 feet along a partition fence between Dorbandt and this survey and also along the South line of the John St. Clair Survey N. 54 to a fence corner which is the SE corner of this survey;

"Thence North 2546 feet to a fence corner in the center of a Creek for the Northeast corner of this survey;

"Thence, West along a partition fence a distance of 2480 feet to the 1020 feet elevation contour line;

"Thence up and down the meanders of Cedar Springs Creek with meanders of the 1020 elevation contour line which is a partitioned fence line between Dorbandt and this tract;

"Thence West across a peninsula 440 feet to the intersection of the 1020 contour line on the west side of the peninsula;

"Thence, Southwesterly with the meanders of the elevation 1020 feet contour line to its intersection with the West line of the F. C. Rector Survey No. 403, which is the West line of the Dorbandt tract;

"Thence, North along a partition fence a distance of approximately 975 feet to the point of beginning, and containing within its metes and bounds, 386 acres of land more or less."

In this deed the grantor conveyed to the grantees an easement over and across lands owned by grantor from the nearest point located on a public road to the lands conveyed. Grantor retained a one-sixteenth interest in the oil, gas and other minerals.

In the deed dated December 8, 1956, from Ulbricht and Heckman there was conveyed to Dudley Prade the 386 acre tract, excepting therefrom Rocky Ridge Subdivision No. 1. There was conveyed also a 5.4 acre tract and Lots 19 and 20 in Rocky Ridge Subdivision.

The deed contains a paragraph as follows:

"(4) All easements, ways of ingress and egress, water rights and all other property rights of every character heretofore acquired by grantors or to which they are entitled incidental to or in connection with all of the foregoing described lands and premises."

On trial before the Court on the 5th day of September, 1957, without a jury, a judgment was rendered favorable to the plaintiffs, and decreed that plaintiff Dudley Prade have and recover from the defendants a tract of land with metes and bounds including the 386 acre tract, together with the title to lands lying under the Buchanan Lake, and extending Prade's title from the 1020 foot contour line to the East bank of the Colorado River, which river bank is far beyond the water's edge of the lake, such description is set out in the judgment as (omitting specific description):

"Beginning at a stone mound and fence corner at the northwest corner of the F. C. Rector Survey No. 403 which is the northeast corner of the John B. Loveridge Survey No. 90 and which is also a northwest corner of the Dorbandt tract;

"Thence South 1180 feet;

"Thence West 10,420 feet * * * to the east bank of the Colorado River;

"Thence upstream with the meanders of the river N. 25 E. 1303 feet to corner;

"Thence upstream with the meanders of the river 232 varas;

"Thence upstream with the meanders of the river N. 19 E. 2011 feet;

"Thence East 14,673 feet to corner;

"Thence South 2546 feet to corner;

"Thence West 5458 feet to *place of beginning,* etc." with certain exceptions.

Appellant has five points and are to the effect that the Court erred in overruling the exception that the four year statute of limitation did not bar plaintiffs' recovery, and granting plaintiffs title to the lands lying beneath the waters of Lake Buchanan, and erred in granting title to the lands between the 1020 contour line and the river bank, because the deed under which plaintiffs claim title contains no ambiguity and because there was insufficient evidence to support a finding that the parties to the deed under which plaintiffs claim title intended to convey lands below the 1020 contour line, and in holding that the 1020 foot elevation line was a meander line, and finally in granting plaintiffs the right to go below the 1020 foot contour line to obtain access to the waters of the lake, because no such easement was granted in the deed under which plaintiffs claim.

■■■ We believe that the Court erred in awarding title to Prade to the lands underneath Lake Buchanan between the 1020 foot contour line and the east bank of the Colorado River. In so doing the acreage conveyed by the deed to Ulbricht and Heckman, stated to be 372 acres out of the John St. Clair Survey, there would be an additional 399 acres and of a recited conveyance of 14 acres out of the John B. Loveridge Survey No. 90, there would be an additional acreage of 256 acres conveyed, or instead of plaintiffs recovering 386 acres as sued for, appellant Prade, the present owner, would get title to an additional 641 acres approximately.

The deed from Linda Lou Friedsam to Ulbricht and Heckman is clear and unambiguous and the witness, Surveyor Gibbs, was able to follow the lines without difficulty except as to terrain.

In Richey v. Miller, 142 Tex. 274, 177 S.W.2d 255, 170 A.L.R. 832, it was held that in a suit in trespass to try title and where the field notes are specific and unambiguous that the land involved is controlled by the field notes.

There is in the general description of the property this language: " * * * all those certain pieces, parcels or tracts of land * * * adjacent to the waters of Buchanan Lake * * *."

It is noted that all calls in the deed are for course and *distance along a partition fence,* except the sixth call reads:

"Thence, Southwesterly with the meanders of the elevation 1020 feet contour line to its intersection with the West line of the F. C. Rector Survey No. 403, which is the West line of the Dorbandt tract."

We do not believe that it was the intent of the parties, and the wording of the deed does not justify the assumption, that the lands below the 1020 contour line were being conveyed.

Appellant Friedsam testified that she told Mr. Heckman that he could not go below the 1020 line and they said that was all right. They would see about getting water, and that at the time Ulbricht and Heckman bought the land she had not given any thought to the sale of the land below the 1020 line.

Witness Schaffer testified as to the conversation had with Ulbricht, Heckman, Miss Friedsam and others were present, and that Ulbricht and Heckman were told that they would not get any water, ingress to the water's edge, and they said "We'll take care of that part of it."

E. J. Ulbricht testified as to the location of the property and of events leading to the purchase of the land and of a conversation with Miss Friedsam in Waco; that she said that we did not have much land, and she would be glad to sell it because it was cut off from her ranch on account of water; that we had a good lake front, and of development if we could get a road; that they bought 386 acres which was to the lake front.

V. G. Heckman testified concerning the purchase of the property and of a conversation with (A. M.) Acey Gibbs who wanted to sell the land for Miss Friedsam, and that it was lake front property and of meeting with Miss Friedsam at Waco.

The several deeds above referred to were introduced in evidence.

The 1020 foot elevation contour line was in existence and marked the boundaries of interests in real estate prior to the execution of the deed to Ulbricht and Heckman. This deed made no exception of any easement in favor of Emory, Peck and Rockwood Development Company, but all parties knew of such deed and of its terms, and the deed conveyed 386 acres bounded in part by the 1020 line and did not include any land below such line; and the purchasers assessed for taxation only 386 acres and Linda Lou Friedsam assessed all of the land below the 1020 line for taxation.

We believe that the 1020 contour line is a fixed line and not a meander line and was the westerly boundary of the lands described in the deed, and could be definitely located on the ground and had been used to determine property bounds in the deed to Emory, Peck and Rockwood Development Company several years before the lake was created.

In 7 Tex.Jur., Boundaries, Section 21, page 139, the rule pertaining to meander lines is set out.

At the time the deed was executed conveying 386 acres Miss Friedsam owned the land above the 1020 line free of any easements, and below the line she owned the land encumbered by the easement granted by Mrs. Cassie A. Friedsam et al., hereinabove referred to, and the deed of conveyance to appellees does not contain an exception as to the easement and if such easement was to have been conveyed, or intended to be conveyed, such would have been included in the deed.

The 1020 foot contour line does not define the sinuosities of the river, it lies at a much higher elevation and at great and varying distances from the river and cannot be considered a meander line of the river, but is a line of the high water mark alone given Buchanan Lake, an artificially created lake.

The rule as to boundary lines regarding lakes is set out in 7 Tex.Jr., Section 17, page 136:

"But in Texas it has been held not only that a call for a margin, edge of water, high or low water mark, or shore or bank of a lake excludes the bed thereof, but also that the common-law doctrine extending a call for a non-navigable stream to the center thereof does not apply to calls for a lake as a boundary."

In Welder v. State, Tex.Civ.App., 196 S.W. 868, er. ref., it is held that a call for the margin, edge of water, high or low water mark, or shore or bank of a lake excludes the bed thereof.

We believe the Court was in error in granting appellees title to the land lying below the 1020 foot elevation line, and in giving appellees the right of access to the waters of Lake Buchanan when the water is below such line.

Riparian rights depend upon ownership of land which is contiguous to the water. Woody v. Durham, Tex.Civ. App., 267 S.W.2d 219, er. ref.; 93 C.J.S. Waters § 8, page 607.

The judgment of the District Court is reversed and judgment is here rendered that plaintiffs take nothing except the title to the lands actually described in the deeds to Ulbricht and Heckman.

Reversed and rendered.
  *On Appellees' Motion for Rehearing*

Appellees are concerned lest our judgment be construed as depriving them of the benefits of the agreed judgment entered in

Cause No. 3783, styled Linda Lou Friedsam et al. v. E. J. Ulbricht et al. in the District Court of Burnet County. We did not intend to prejudice that judgment nor the rights conferred by it in any manner. Since, for reasons to be stated, we are reversing and remanding this case the Court below in preparing its final judgment herein will, by the use of appropriate language, safeguard and protect the rights of the parties under the judgment in Cause No. 3783.

Appellees pleaded that by mutual mistake of the contracting parties the deed of June 18, 1947, from Friedsam to Heckman and Ulbricht was not drawn so as to convey to grantees land fronting and abutting upon the waters of Lake Buchanan, making the lake rather than the contour line the boundary; and so as to give the grantees access to the lake at all times, including the rights reserved to the grantors in the L. C. R. A. easement, and title to the land below the contour line.

We did not specifically dispose of this ground of recovery in our original opinion.

█ A general rule is that a trial court's judgment will be sustained on any theory supported by the pleadings and evidence and authorized by law. McDonald, Texas Civil Practice, Vol. 4, Sec. 16.10(d), p. 1303; Laws v. Parker Petroleum Company, Tex.Civ.App., 237 S.W.2d 398, reversed 150 Tex. 430, 242 S.W.2d 164.

█ Another general rule is that parties are entitled to a trial on the *facts*. In Rose v. Baker, 143 Tex. 202, 183 S.W.2d 438, 442, the judgment was reversed because the record reflected "that the trial court disposed of the claims based on negligence without a trial on the facts."

It is sometimes difficult to determine whether or not there has been a trial of essential fact issues. Witness our opinions in Laws v. Parker Petroleum Company,

supra, and in Davis v. Cavanaugh, Tex.Civ. App., 231 S.W.2d 959, reversed 149 Tex. 573, 235 S.W.2d 972. However in Heitkamp v. Krueger, Tex.Civ.App., 265 S.W. 2d 655, writ ref., N.R.E., we correctly construed a judgment as not determining all essential issues.

Appellant has in her brief these points relating to the plea of reformation of the June 18, 1947, deed (1) the 4 year statute of limitation, under the evidence, barred the granting of this relief (2) the court awarded appellees lands extending to the original east bank of the Colorado River whereas the pleading only requested the deed be reformed so as to award title to lands extending to the waters edge of Lake Buchanan[1] (3) the evidence is insufficient to show that the parties to the deed intended it to convey lands between the 1020 elevation contour and the east bank of the Colorado River.

Appellees in their brief have a counterpoint in which they seek to sustain the judgment upon their plea for reformation and evidence in support thereof however they make this unequivocal statement:

"The correct status of plaintiffs' Third Count (reformation) in the trial court was that it was never reached for decision, since the trial court held that the contour line was a meander line under the evidence, the lake being the boundary, and construed the deed as conveying title to land in the lake. The trial court had no occasion to pass on the Third Count."

In view of the judgment extending appellee's recovery beyond the water edge of Lake Buchanan we are inclined to accept appellee's interpretation of the record as showing no determination of the issues raised under their plea for reformation of the deed of June 18, 1947.

Our order of remand is general but the Trial Court will be guided by the opinions

---

1. The pleadings sustain the accuracy of this statement.

herein as to the law if the facts are substantially the same upon retrial.

Appellee's Motion for Rehearing is granted to the extent that our judgment reversing and rendering this cause is set aside and this cause is now reversed and remanded.

Granted in part; in part overruled.